62

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

MARQUES JOHNSON,

Plaintiff,

v.

CAPITAL ONE, N.A.,

Defendant.

FILED
JUN 16 2025
CLERK'S OFFICE
DETROIT

Case No. 2:25-cv-10737-MFL-APP

# FIRST AMENDED COMPLAINT

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1640(a).

2. Venue is proper under 28 U.S.C. § 1391(b) because Defendant conducts business in this District and the relevant acts occurred here.

## PARTIES

3. Plaintiff is a Michigan resident.

4. Defendant Capital One, N.A. is a national bank headquartered in Virginia and conducts business in Michigan.

---

## FACTUAL ALLEGATIONS

### A. Application Created a Monetizable Receivable

5. Plaintiff applied for and received credit card account ending in #1583.

6. No cash was exchanged—only Plaintiff's application and agreement to repay.

7. Under the Customer Agreement (Exhibit A), Capital One reserves the right to "sell, assign, or transfer" Plaintiff's account without notice.

8. This makes Plaintiff's application and obligation a receivable—an asset monetizable and transferable.

9. In *Cohen v. Capital One*, 489 F. Supp. 3d 33, 50 (D.D.C. 2020), the court confirmed: "Receivables are pooled and sold monthly."

10. In *SEC v. Spiegel, Inc.*, 1:03-cv-01685 (N.D. Ill.), the SEC revealed Spiegel was securitizing $3.4 billion per month in credit card receivables through off-balance sheet structures. Discovery revealed this only after the court appointed a forensic examiner

(Dkt. 7) and reviewed a 220-page examiner report (Dkt. 44).

11. Plaintiff alleges Capital One uses the same structure and that his application was monetized similarly. Only discovery can reveal the specific dollar amount Capital One gained from selling or pooling Plaintiff's obligation.

12. The Spiegel case shows this structure is not theoretical and is actually standard routine practice.

**B. Case Law Proving Applications Have Value**

13. The Sixth Circuit and other federal courts confirm that signed credit applications and contracts—even without money exchanged—are **valuable receivables**:

- *Lucas v. United States*, 99 F.3d 1290 (6th Cir.) – a signed financial obligation is a valuable asset.

- *United States v. Thrush*, 2024 WL 5004322 (E.D. Mich.) – obligations stemming from application-based agreements have measurable asset value.

- *Krimsky v. United States*, 230 F.3d 855 (6th Cir.) – application-based obligations are enforceable and monetizable.

- *Wirth v. United States*, 437 F. Supp. 2d 688 (E.D. Mich.) – even non-performing receivables have book value under law.

14. These precedents confirm that Plaintiff's application was a financial asset—eligible for securitization and transfer.

---

**C. Durable Power of Attorney & Legal Authority**

15. On January 7, 2025, Plaintiff submitted a notarized Durable Power of Attorney authorizing himself to act on behalf of the principal (Exhibit B).

16. Plaintiff has legal authority to issue tenders, demand performance, and resolve financial obligations.

---

**D. Tender of Payment and Defendant's Total Silence**

17. On January 14, 2025, Plaintiff submitted a negotiable instrument (exhibit G) and tender of payment titled "Credit Claim" to Capital One CFO Andrew M. Young (Exhibit E).

18. On February 10, 2025, Plaintiff submitted a second tender titled "Opportunity to Cure" (Exhibit H).

19. On February 18, 2025, Plaintiff submitted a third and final instrument titled "Default Judgment" (Exhibit I).

20. All tenders cited the underlying application as the security collateral for payment, and all instructed Defendant to communicate within 3 business days.

21. Capital One failed to respond to any tender.

---

**E. Account Closure Without Just Cause**

22. On October 31, 2024, Capital One closed the account, citing only "activity inconsistent with expectations" (Exhibit C).

23. No specific clause in the agreement was cited.

24. On January 14, 2025, Plaintiff submitted a Request for Clarification demanding specifics (Exhibit F).

25. Capital One did not respond.

26. On January 7, 2025, Plaintiff submitted a detailed Request for Review and Reinstatement (Exhibit D), explaining:

- The tender was an honest method-based mistake, not fraud.
- The account was used for family necessities.

- Plaintiff wished to repay and resolve the issue.

27. Capital One remained silent.

---

# CAUSES OF ACTION

## COUNT I – TRUTH IN LENDING ACT VIOLATION (Disclosure)

15 U.S.C. § 1637(a)(6); 12 C.F.R. § 1026.6(a)(4)

28. Capital One failed to disclose that it would securitize and sell Plaintiff's obligation.

29. This is a material interest in the consumer's obligation and should have been disclosed.

30. Failure to disclose constitutes a violation of TILA.

---

## COUNT II – TILA VIOLATION (Failure to Credit Payment)

15 U.S.C. § 1640; 12 C.F.R. § 1026.10(a)

31. Plaintiff tendered multiple lawful payment instruments (Exhibits E, H, I).

32. Under *Emmons v. National Bank & Trust*, 8 F.4th 454 (6th Cir. 2021), anything of value must be credited.

33. Defendant failed to credit or reject the tenders in writing. Plaintiff's tender also constituted legal discharge of the obligation under **UCC § 3-603(b)**, which states:

*"If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender..."*

34. Capital One refused tender and continued to report the account as delinquent. This failure to apply credit violates federal and commercial law and caused real, measurable harm. This failure constitutes a violation of TILA.

---

## COUNT III – BREACH OF CONTRACT (Enhanced with Causal Link)

35. Plaintiff entered a valid agreement with Defendant (Exhibit A).

36. Plaintiff performed by tendering full payment (Exhibits E, H, I).

37. Capital One breached by refusing tender, failing to respond, and closing the account arbitrarily.

38. As shown in *Spiegel*, Defendant monetized the obligation but failed to honor Plaintiff's performance. Capital One's refusal to apply Plaintiff's instrument—despite being the party entitled to enforce the obligation—triggered discharge under **UCC § 3-603(b)**. Yet Defendant continued to act as if the obligation remained unpaid, closed the account, and reported it negatively—thereby breaching the parties' agreement and causing financial and reputational harm.

39. **Causal Link to Damages:**

- Tender was refused → Account closed
- Account closed → Plaintiff denied access to emergency funds
- Reporting continued → Credit score dropped
- Application still monetized → Defendant enriched, Plaintiff harmed

40. This breach directly caused:

- Financial harm, reputational harm, and economic loss
- Ongoing delinquency reporting (Exhibit J)
- Inability to use credit for daily needs

---

## COUNT IV – UNJUST ENRICHMENT

41. Capital One retained the benefit of Plaintiff's securitized obligation.

42. Defendant also retained value by not applying Plaintiff's tenders.

43. No performance was rendered. No restitution offered.

44. Under *Wright v. Genesee Cnty.* and *Tkachik v. Mandeville*, this unjustly enriched Defendant.

---

# DAMAGES (Specific & Itemized)

45. **Statutory Damages:** $2,000 under 15 U.S.C. § 1640(a)(2).

46. **Actual Economic Damages:**

- $1,683.22 – Improperly held balance
- $2,000 – Lost financial opportunities
- $3,500 – Credit damage and repair costs
- $3,000 – Hardship from denied access to funds

47. **Reputational & Emotional Damages:**

- $5,000 – Stress and mental anguish
- $2,500 – Reputational harm from Equifax report (Exhibit J)

48. **Unjust Enrichment Estimate:**

- $10,000+ – Based on repeated monthly monetization of Plaintiff's receivable as shown in *Spiegel*

49. **Punitive Damages:** $25,000 – Willful disregard and silence

50. **Fees & Costs:** All court filing costs, time, and attorney compensation

51. **Equitable Relief:**

- Reopen account
- Accept future lawful tenders
- Correct all credit reporting
- Increase credit limit to reflect full value of securitized receivable

---

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a) Enter judgment declaring the obligation discharged

b) Award actual, statutory, and punitive damages

c) Order Defendant to reinstate the account

d) Order Capital One to correct all negative credit reporting

e) Require Defendant to accept lawful tender of payments going forward

f) Require Defendant to increase Plaintiff's credit line

g) Award attorney fees and court costs

h) Grant such other relief as the Court deems just and proper

Respectfully submitted,

/s/ Marques Johnson

Marques Johnson

1486 Robert Bradby Drive #D

Detroit, MI 48207

mjtheone49@gmail.com

313-736-6769

Dated: June 13, 2025

# **Exhibit A:**

Contract

Capital One
P.O Box 30285
Salt Lake City, UT 84130-0285

February 25, 2025

000090092
UPCR

MARQUES A JOHNSON
APT D
1486 ROBERT BRADBY DR
DETROIT, MI 48207-495076

Re: Your account number ending in 1583

Thank you for contacting us about the terms on your Capital One® account. Your current terms are listed below and on the following pages:

**Credit Limit: $1,500.00**

| INTEREST RATES AND INTEREST CHARGES | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | **29.74%.** This APR will vary with the market based on the Prime Rate. |
| **APR for Transfers** | **29.74%.** This APR will vary with the market based on the Prime Rate. |
| **APR for Cash Advances** | **29.74%.** This APR will vary with the market based on the Prime Rate. |
| **Paying Interest** | Your due date is at least 25 days after the close of each billing cycle. We will not charge interest on new purchases, provided you have paid your previous balance in full by the due date each month. We will begin charging interest on cash advances and special transfers on the transaction date. |
| **For Credit Card Tips from the Consumer Financial Protection Bureau** | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at **http://www.consumerfinance.gov/learnmore**. |

© 2025 Capital One. Capital One is a federally registered service mark.

COLR153D 6056 3003 204 07 20250225 PG 1 OF 5
00090092 54402323.1 0-0

| | |
|---|---|
| **Minimum Interest Charge** | There is no Minimum Interest Charge on this account. |
| **FEES** | |
| **Annual Fee** | **None.** |
| **Transaction Fees**<br>• **Transfer** | **None.** |
| • **Cash Advance** | Either **$3** or **3%** of the amount of each cash advance, whichever is greater. |
| **Penalty Fees**<br>• **Late Payment** | Up to **$40.** |
| • **Returned Payment** | **None.** |

**How Do You Calculate My Balance?** We use a method called "average daily balance (including new transactions)." See the "How Do You Calculate The Interest Charge?" section below.

**What Are My Billing Rights?** Information on your rights to dispute transactions and how to exercise those rights is provided in "Your Billing Rights Summary" on your Statement, in your card agreement, and other Truth-in-Lending Disclosures.

***THINGS YOU SHOULD KNOW ABOUT THIS CARD***

**How Do You Calculate My Variable Rates?** Your variable rates may change when the Prime Rate changes. We calculate variable rates by adding a percentage to the Prime Rate published in *The Wall Street Journal* on the 25th day of December, March, June and September. If the *Journal* is not published on that day, then see the immediately preceding edition. Variable rates on the following segment(s) will be updated quarterly and will take effect on the first day of your January, April, July and October Billing periods: Non-introductory Purchase APR: Prime plus 22.24%; Non-introductory Transfer APR: Prime plus 22.24%; Cash Advance APR: Prime plus 22.24%. Any increase in the Prime Rate may increase your Interest Charges and your Minimum Payment.

**What Are The Daily Periodic Rates Used To Calculate My Interest?** The daily periodic rate for your Non-introductory Purchase APR is 0.08148%; Non-introductory Transfer APR is 0.08148%; Cash Advance APR is 0.08148%. See the "How Do You Calculate The Interest Charge?" section below.

**How Do You Calculate The Interest Charge?** We use a method called Average Daily Balance (including new transactions). Under this method, we first calculate your daily balance: for each segment, (1) take the beginning balance and add in new transactions and the periodic interest charge on the previous day's balance, then (2) subtract any payments and credits for that segment as of that day. The result is the daily balance for each segment. However, if you paid your previous month's balance in full (or if your balance was zero or a credit amount), new transactions which post to your purchase or special purchase

© 2025 Capital One. Capital One is a federally registered service mark

segments are not added to the daily balances. Also, transactions subject to a grace period are not added to the daily balances.

Next, to find your Average Daily Balance: (1) add the daily balances together for each segment, and (2) divide the sum by the number of days in the billing cycle.

At the end of each billing cycle, we determine your Interest Charge as follows: (1) multiply your Average Daily Balance by the daily periodic rate (APR divided by 365) for that segment, and (2) multiply the result by the number of days in the billing period. NOTE: Due to rounding or a minimum interest charge, this calculation may vary from the interest charge actually assessed.

© 2025 Capital One. Capital One is a federally registered service mark

COLR1530 6056 5085 206 07 20250225 PG 2 OF 5
00090092 54402323.1 0-0

# Capital One® Customer Agreement

## Welcome to Capital One

Thank you for opening a credit card account with us. This Customer Agreement including any changes to it ("Agreement") contains the terms of your agreement with Capital One.

## Definitions

The meanings of the terms you see in italics appear in the **Glossary** section at the end of this Agreement.

As used here, "you" and "your" mean each applicant and co-applicant for the *Account*; any person responsible for paying the *Account*; and any person responsible for complying with this Agreement. "We," "us," "our," and "Capital One" mean Capital One, National Association; and its agents, authorized representatives, successors, and assignees.

## Account Documents

The following documents govern your *Account* with us:

(1) this Agreement;
(2) all *Statements*;
(3) any rewards program terms, conditions, and disclosures;
(4) any privacy notices;
(5) your *Card* benefits brochure which describes benefits provided by the *Payment Card Network* for your *Account*;
(6) all disclosures and materials provided to you before or when you opened your *Account*;
(7) any other documents and disclosures relating to your *Account*, including those provided online; and
(8) any future changes we make to any of the above.

Please read these carefully and keep them for future reference.

## New Offers

In the future, we may provide you with new offers that we think may interest you. The terms of these offers may differ from the standard terms on your *Account*. This Agreement will still apply.

## Account Information

We need information about you to manage your *Account*. This includes:

(1) your legal name;
(2) a valid U.S. mailing address and residential address (if different);
(3) your date of birth;
(4) your Social Security number or other government identification number;
(5) your telephone number(s); and
(6) your employment and income information.

You must tell us when this information changes. We may ask you for additional documents to verify any changes.

We may restrict or close your *Account* if we cannot verify your information, or if you do not provide it as requested.

## Your Revolving Credit Line and Spending

We will tell you your initial revolving credit line when you open your *Account*. We may increase or decrease your revolving credit line at any time without prior notice to you, unless notice is required by law, and we may limit or take away the credit available for *Cash Advances*. You can find your current revolving credit line on your *Statement*. We may not authorize transactions in excess of your revolving credit line. We may consider each transaction that may cause you to exceed your revolving credit line based on several factors, including your performance on this *Account* and other credit accounts you have with us and your performance with other creditors. If we do authorize transactions in excess of your revolving credit line, they will be subject to this Agreement. They will not result in an increase of your revolving credit line.

## Using Your Account

(1) This Agreement applies whether or not you use your *Card* or *Account*. It will continue to apply even after your *Account* is closed, as long as you have a balance.
(2) You must sign the *Card* immediately when you receive it.
(3) You must return the *Card* to us or destroy it if we ask you to.
(4) You must take reasonable steps to prevent the unauthorized use of your *Card*, *Access Checks* and *Account*.
(5) We may decline to authorize a transaction for any reason. This may occur even if the transaction would not cause you to go over your revolving credit line or your *Account* is not in default.
(6) We are not responsible for any losses you incur if we do not authorize a transaction.
(7) We are not responsible for any losses you incur if anyone refuses to accept your *Card* for any reason.
(8) Unless we tell you otherwise, we will bill each transaction to the applicable *Segment* of your *Account*. We will apply it against your available credit for that *Segment*.
(9) You may obtain *Cash Advances* and *Transfers* as permitted for your *Account*. You may not use these to pay any amount you owe us or any other company in the Capital One organization.
(10) You must not use, or try to use, the *Card* for any illegal activity. You are responsible for any charges if you do.
(11) We are not liable for any losses that may result when our services are unavailable due to reasons beyond our control.

## Rewards

Your *Account* may provide you with the opportunity to earn rewards. If it does, we will separately provide you with information and terms about the rewards.

## Access Checks

We may provide you with *Access Checks*. If we do, we will tell you at the time if we consider them purchases, *Cash Advances* or *Special Transfers*.

Only the person we designate may use *Access Checks*. You may not use them to pay any amount you owe us or any other company in the Capital One organization. We may reject and not pay any *Access Check* if:

(1) your *Account* is past due, charged off, bankrupt, lost/stolen or closed;
(2) we suspect fraud;
(3) your *Account* is over the revolving credit line; or
(4) the check has expired, is damaged or cannot otherwise be processed.

Our liability if we do not pay an *Access Check* will never be more than (1) your actual damages or (2) the amount of the *Access Check*, whichever is less.

Use of an *Access Check* is not the same as using your *Card*. When you use an *Access Check*, you will have fewer rights to dispute merchant transactions than with uses of your *Card*. Please see the "Billing Rights Summary" on your *Statement* and your other *Truth-in-Lending Disclosures* for more information.

## Stopping Payment of Access Checks

You may request a stop payment on any *Access Check* by contacting Customer Service.

We will have a reasonable amount of time after your stop payment request to research and complete the stop payment. We will not be responsible if we cannot complete the stop payment. Reasons include:

(1) the *Access Check* was already paid;
(2) you do not give us the information we asked for; or
(3) the information you gave us was incorrect.

We do not have to release the stop payment order unless the account holder who made the request asks us to. If we re-credit your *Account* after a valid stop payment order, you give us all of your rights against the payee or other holder of the paid *Access Check*. You also agree to help us in any legal action we may later take against the payee or other holder of the check.

## Using a PIN

We may give you a personal identification number (PIN). For security reasons, you may have to provide the PIN before you are able to use your *Card*.

Keep your PIN secure. Do not write it down, give it to anyone, or keep it with your *Card*. If you lose your *Card* or believe the confidentiality of your PIN has been compromised for any reason, you must contact Customer Service immediately.

## Authorized Users

If you ask us to issue a *Card* to any other person, they are an *Authorized User*. We may require certain information about them. We may limit their ability to use your *Card*. They may have access to certain information about your *Account*. You will be responsible for their use of the *Account* and anyone else they allow to use your *Account*, even if you did not want, or agree to, that use.

## Removing an Authorized User

If you want to remove an *Authorized User* from your *Account*, you must contact Customer Service and request their removal. You also must immediately destroy all *Cards* in their possession and cancel any arrangements they may have set up on your *Account*. They will be able to use your *Account* until you have notified us that you are removing them from your *Account*. During this time, you will still be responsible for all amounts they charge to your *Account*. You will be responsible even if these amounts do not appear on your *Account* until later.

*Authorized Users* may remove themselves from your *Account* upon request. We reserve the right to remove them from your *Account* for any reason. To remove them from your *Account*, we may close your existing *Account* and issue a new *Card* with a new *Account* number.

## Your Promise to Pay

You promise to pay us all amounts due on your *Account*. This includes amounts where you did not sign a purchase slip or other documents for the transaction. We will treat transactions made without presenting your actual *Card* (such as for mail, telephone, Internet, or mobile device purchases) the same as if you used the *Card* in person. If you let someone else use your *Card*, you are responsible for all transactions that person makes.

## Statements

We will generally send or make available to you one *Statement* for all *Cards* on your *Account* at the end of each *Billing Cycle*. Under certain circumstances, the law may not require us to send or make available to you a *Statement*, or may prohibit us from doing so.

## Disputed Transactions

You must inspect each *Statement* you receive. Tell us about any errors or questions you have, as described in the "Billing Rights Summary" on your *Statement* and other *Truth-in-Lending Disclosures*. If you do not notify us of an error, we will assume that all information on the *Statement* is correct.

If we credit your *Account* for all or part of a disputed transaction, you give us all of your rights against others regarding that transaction. You will also:

(1) give us any information about the disputed transaction, if we ask;
(2) not pursue any claim or reimbursement of the transaction amount from the merchant or any other person; and
(3) help us get reimbursement from others.

COLR1533D 6056 3003 204 07 20250225 PG 3 OF 5
08090092 54402323.1 0-8

### No Warranties

We are not responsible for any claim you may have regarding the purchase of goods or services made with your *Card* beyond your rights described in the "Billing Rights Summary" on your *Statement*.

### Lost or Stolen Card

If your *Card* is lost or stolen or if you think someone else may be using your *Card* or *Account* number without your permission, you must contact Customer Service immediately. You will not be responsible for transactions on your *Account* that we find are unauthorized.

If we reimburse you for unauthorized transactions, you will help us investigate, pursue and get reimbursement from the wrongdoer. Your help includes giving us documents in a form that we request.

### Interest Charges and Fees

We will charge *Interest Charges* and *Fees* to your *Account* as disclosed on your *Statement* and other *Truth-in-Lending Disclosures*. In general, *Interest Charges* begin to accrue from the day a transaction occurs. However, we will not charge you interest on any new transactions posted to the purchase *Segment* of your *Account* if you paid the total balance across all *Segments* of your *Account* in full by the due date on your *Statement* each month. From time to time, we may give you offers that allow you to pay less than the total balance and avoid *Interest Charges* on new purchase *Segment* transactions. If we do, we will provide details in the specific offer.

We will generally treat *Fees* as purchase transactions unless otherwise specified below. These *Fees* apply to your *Account* only if your *Truth-in-Lending Disclosures* provide for them. We may increase your *Interest Charges* and *Fees* as described in the **Changes to Your Agreement** section or in your *Truth-in-Lending Disclosures*.

### Membership Fee

If your *Account* has a membership *Fee*, we may charge the first membership *Fee* either on the day you activate your *Card* or on the day when you use your *Account*, whichever occurs first. If your *Account* terms include a $0 introductory *Fee*, we may charge the first *Fee* when the introductory period ends. If it is an annual *Fee*, we may then charge it approximately once per year. If it is a monthly *Fee*, we may charge it each *Billing Cycle*.

### Late Payment Fee

We may charge you this *Fee* if we do not receive your payment as instructed on your *Statement* by the payment due date.

### Returned Payment Fee

We may charge you this *Fee* each time your financial institution for any reason rejects a payment you make to us.

### Stop Payment Fee

We may charge you this *Fee* each time you ask us to (1) stop payment on an *Access Check* or (2) renew an existing stop payment order.

### Cash Advance Fee

We may charge you this *Fee* each time you take out a *Cash Advance*. We will treat this *Fee* as a *Cash Advance* transaction.

### Transfer Fee

We may charge you this *Fee* each time you make a *Transfer*. We will charge the *Fee* to the same *Segment* where we post the *Transfer*.

### Transactions Made in Foreign Currencies

If you make a transaction in a foreign currency, the *Payment Card Network* will convert it into a U.S. dollar amount. *The Payment Card Network* will use its own currency conversion procedures. The conversion rate in effect on the processing date may differ from the rate in effect on the transaction date that appears on your *Statement*. We do not adjust the currency exchange rate or charge any currency conversion *Fees*.

### Minimum Payment

You must pay us at least the minimum payment amount by the payment due date. Your *Statement* will tell you:

(1) the minimum payment due,
(2) your new balance,
(3) the payment due date, and
(4) an explanation of when the payment must reach us for us to consider it received as of that date.

Returns and other credits to your *Account* will reduce your *Account* balance, but they will not change your minimum payment amount.

In addition to the minimum payment, you may pay all or part of the total balance on your *Account*. But, you must still pay at least the minimum payment amount each month, even if you paid more than the minimum payment due on the previous *Statement*. We will continue to charge *Interest Charges* during *Billing Cycles* when you carry a balance regardless of whether your *Statement* includes a minimum payment that is due. If your *Account* is 180 days past due, is part of a bankruptcy proceeding or is otherwise charged off, the total balance is immediately due and payable.

### Making Payments

Your payment must be made in U.S. dollars from a U.S. deposit account in a form acceptable to us. We do not accept cash payments through the mail. You may not make payments with funds from your *Account* or any other credit account with us or any other company in the Capital One organization. You must send mailed payments to us as instructed on your *Statement*, unless we tell you otherwise.

## Other Payment Services

We may make services available that allow you to make faster or recurring payments online or by telephone. We will describe the terms for using these services and any applicable *Fee* before you use them. You do not have to use these other payment services.

We are not responsible if your financial institution rejects a payment made using our payment services.

If you ask someone else to make a payment for you, we may provide that person with limited *Account* information necessary to set up and process that payment. We may also refuse to accept that payment. If we do accept it, you will be responsible for that payment even if a financial institution rejects it.

## Payment Processing

We may accept and process payments without losing any of our rights. We may delay the availability of credit until we confirm that your payment has cleared. This may happen even if we credit your payment to your *Account*. We may resubmit and collect returned payments electronically. If necessary, we may adjust your *Account* to correct errors, process returned and reversed payments, and handle similar issues.

When you send us an *Item* as payment, you authorize us to make a one-time electronic fund transfer from your deposit account. You also authorize us to process the payment as an *Item*. We may withdraw the funds from your deposit account as early as the same day we receive your payment. You will not receive your *Item* back from your bank. We will provide additional information about this process on your *Statement*.

We may use the information from an *Item* to create an electronic image. We may collect and return the image electronically. This electronic image may also be converted to a substitute check and may be processed in the same way we would process an *Item*. We will not be responsible if an *Item* you provide has physical features that when imaged result in it not being processed as you intended.

## How We Apply Your Payments

Your *Account* may have *Segments* with different Annual Percentage Rates (APR). For example, purchases may have a lower APR than *Cash Advances*. If your *Account* has *Segment* balances with different APRs, here is how we apply payments in a *Billing Cycle*:

(1) We generally apply credits and payments up to your minimum payment first to the balance with the lowest APR, and then to balances with higher APRs
(2) We apply any part of your payment exceeding your minimum payment to the balance with the highest APR, and then to balances with lower APRs

## Items with Restrictive Words, Conditions, or Instructions

You must mail all *Items* bearing restrictive words, conditions, limitations, or special instructions to:

Capital One
PO Box 1330
Charlotte, NC 28201-1330

This includes *Items* marked "Paid in Full" or similar language. This also includes all accompanying communications.

If you make such a payment or send any accompanying communications to any other address, we may reject it and return it to you. We may also accept it and process it without losing any of our rights.

## Credit Balances

We may reject and return any payment that creates or adds to a credit balance on your *Account*. Any credit balance we allow will not be available until we confirm that your payment has cleared. We may reduce the amount of any credit balance by any new charges. You may write to the address provided on your *Statement* or call Customer Service to request a refund of any available credit balance.

## Account Default

You will be in default if:

(1) you do not make any payment when it is due;
(2) any payment you make is rejected, not paid or cannot be processed;
(3) you file or become the subject of a bankruptcy or insolvency proceeding;
(4) you are unable or unwilling to repay your obligations, including upon death or legally declared incapacity;
(5) we determine that you made a false, incomplete or misleading statement to us, or you otherwise tried to defraud us;
(6) you do not comply with any term of this Agreement or any other agreement with us; or
(7) you permanently reside outside the United States.

If you are in default, we may take certain actions with respect to your *Account*. For example, depending on the default, we may take the following actions, without notifying you, unless the law says that we must give you notice:

(1) charge you *Fees*, or change the APRs and *Fees* on your *Account*, if provided in your *Truth-in-Lending Disclosures*;
(2) close or suspend your *Account*;
(3) lower your revolving credit line;
(4) demand that you immediately pay the total balance owing on your *Account*;
(5) continue to charge you *Interest Charges* and *Fees* as long as your balance remains outstanding; and/or
(6) file a lawsuit against you, or pursue another action that is not prohibited by law. If we file a lawsuit, you agree to pay our court costs, expenses and attorney fees, unless the law does not allow us to collect these amounts

COLR1530 6056 3003 204 07 20250225 PG 4 OF 5
00098092 54482323.1 0-8

## Communications

You agree that we may communicate with you by mail, telephone, email, fax, prerecorded message, automated voice, text message or other means allowed by law regarding your *Account*.

You agree that we may contact you at any telephone number (including a mobile telephone number that you provide us), and use an automated telephone dialing system or similar device to do so. You agree that we may monitor or record any conversation or other communication with you.

## Credit Reports

We may report information about your *Account* to credit bureaus and others. Late payments, missed payments, or other defaults on your *Account* may be reflected in your credit report. Information we provide may appear on your and the *Authorized Users'* credit reports.

If you believe that we have reported inaccurate information about your *Account* to a credit bureau or other consumer reporting agency, notify us in writing at PO Box 30281, Salt Lake City, UT 84130-0281. When you write, tell us the specific information that you believe is incorrect and why you believe it is incorrect.

We may obtain and use credit, income and other information about you from credit bureaus and others as the law allows.

## Closing or Suspending Your Account

You may contact Customer Service to ask us to close your *Account*.

We may close or suspend your *Account* at any time and for any reason permitted by law, even if you are not in default.

If we close or suspend your *Account* for any reason, you must stop using your *Card*. You must also cancel all billing arrangements set up on the *Account*. If we close or permanently suspend your *Account*, you must return or destroy all *Cards*. You must still pay us all amounts you owe on the *Account*.

## Changes to Your Agreement

At any time, we may add, delete or change any term of this Agreement, unless the law prohibits us from doing so. We will give you notice of any changes as required by law. We may notify you of changes on your *Statement* or in a separate notice. Our notice will tell you when and how the changes will take effect. The notice will describe any rights you have in connection with the changes.

Your variable APRs (if applicable) can go up or down as the index for the rate goes up or down. If we increase your APRs for any other reason, or if we change your *Fees* or other terms of your *Account*, we will notify you as required by law.

## The Law That Applies to Your Agreement

We make decisions to grant credit and issue you a *Card* from our offices in Virginia. This Agreement is governed by applicable federal law and by Virginia law. If any part of this Agreement is unenforceable, the remaining parts will remain in effect.

## Waiver

We will not lose any of our rights if we delay or choose not to take any action for any reason. We may waive our right without notifying you. For example, we may waive your *Interest Charges* or *Fees* without notifying you and without losing our right to charge them in the future.

## Assignment

This Agreement will be binding on, and benefit, any of your and our successors and assigns. You may not sell, assign or transfer your *Account* or this Agreement to someone else without our written permission

We may sell, assign or transfer your *Account* and this Agreement without your permission and without prior notice to you. Any assignee or assignees will take our place under this Agreement. You must pay them and perform all of your obligations to them and not us. If you pay us after we notify you that we have transferred your *Account* or this Agreement, we can return the payment to you, forward the payment to the assignee, or handle it in another way that is reasonable.

## Glossary

- ***"Access Check"*** means any check we send to you to access credit from your *Account*. We may also refer to an *Access Check* as a "convenience check" or a "purchase check".
- ***"Account"*** means your *Card Account* with us.
- ***"Authorized User"*** means a person who may use the *Card*, but is not responsible for the repayment of the *Account*.
- ***"Balance Transfer"*** means a *Transfer* posted to the purchase *Segment* of your *Account* unless otherwise described in your *Truth-in-Lending Disclosures*.
- ***"Billing Cycle"*** means the period of time reflected on a *Statement*. This period may vary in length, but is approximately 30 days. You will have a *Billing Cycle* even if a *Statement* is not required. We will often specify a *Billing Cycle* by the month in which its closing date occurs. For example, a "March *Billing Cycle*" will have a closing date in March. We may also refer to a *Billing Cycle* as a "Billing Period". If your *Account* balance has charged off, we may switch to quarterly *Billing Cycles* for your *Account*.
- ***"Card"*** means any Capital One credit card associated with your *Account*. This includes all renewals and substitutions. It also means any other access device for your *Account* we give you that allows you to obtain credit, including any *Account* number.

- ***"Cash Advance"*** means a loan in cash or things we consider cash equivalents, including wire transfers, travelers' checks, money orders, foreign currency, lottery tickets, gaming chips, and wagers. We post *Cash Advances* to the *Cash Advance Segment* of your *Account* and not to your purchase *Segment*.
- ***"Fees"*** means charges imposed on your *Account* not based on the Annual Percentage Rates.
- ***"Interest Charges"*** means any charges to your *Account* based on the application of Annual Percentage Rates.
- ***"Item"*** means a check, draft, money order or other negotiable instrument you use to pay your *Account*. This includes any image of these instruments. This does not include an *Access Check*.
- ***"Payment Card Network"*** means the network provider displayed on your *Card*. This may be Visa Inc., MasterCard International Incorporated, or any other network provider.
- ***"Segments"*** means the different parts of your *Account* we may establish that are subject to unique APRs, pricing, or other terms. We create these parts of your *Account* for such things as your purchases, *Balance Transfers*, *Cash Advances* and *Special Transfers*. The sum of your *Segment* balances equals your total *Account* balance.
- ***"Special Transfer"*** means a *Transfer* posted to a *Segment* of your *Account* that is not your purchase *Segment* or *Cash Advance Segment*.
- ***"Statement"*** means a document showing important *Account* information, including all transactions billed to your *Account* during a *Billing Cycle* and information about what you must pay. We may also refer to your *Statement* as a "Periodic *Statement*" or a "Billing *Statement*".
- ***"Transfers"*** means amounts transferred from other accounts to this *Account* and includes *Balance Transfers* and *Special Transfers*.
- ***"Truth-in-Lending Disclosures"*** means disclosures that the federal Truth in Lending Act and Regulation Z require for any *Account*. This includes your application and solicitation disclosures, *Account* opening disclosures, subsequent disclosures, *Statements*, and change in terms notices.

Capital One

# <u>Exhibit B:</u>

POA

**Durable Power of Attorney**

I, MARQUES JOHNSON, residing at 1486 Robert Bradby Drive Apt#D, Detroit, Michigan 48207, hereby appoint Marques a Johnson of 1486 Robert Bradby Drive Apt#D, Detroit, Michigan 48207, as my attorney-in-fact ("Agent") to exercise the powers and discretions described below.

This Power of Attorney shall not be affected by my subsequent incapacity.

I hereby revoke any and all general powers of attorney and special powers of attorney that previously have been signed by me.

My Agent shall have full power and authority to act on my behalf. This power and authority shall authorize my Agent to manage and conduct all of my affairs and to exercise all of my legal rights and powers, including all rights and powers that I may acquire in the future. My Agent's powers shall include, but not be limited to, the power to:

1. Open, maintain or close bank accounts (including, but not limited to, checking accounts, savings accounts, and certificates of deposit), brokerage accounts, retirement plan accounts, and other similar accounts with financial institutions.

a. Conduct any business with any banking or financial institution with respect to any of my accounts, including, but not limited to, making deposits and withdrawals, negotiating or endorsing any checks or other instruments with respect to any such accounts, obtaining bank statements, passbooks, drafts, money orders, warrants, and certificates or vouchers payable to me by any person, firm, corporation or political entity.

b. Add, delete or change beneficiaries to any financial accounts I own including insurance policies, annuities, retirement accounts, payable on death savings or checking accounts or other investments.

c. Perform any act necessary to deposit, negotiate, sell or transfer any note, security, or draft of the United States of America, including U.S. Treasury Securities.

d. Have access to any safe deposit box that I might own, including its contents.

2. Provide for the support and protection of myself, my spouse, or of any minor child I have a duty to support or have established a pattern of prior support, including, without limitation, provision for food, lodging, housing, medical services, recreation and travel.

3. Sell, exchange, buy, invest, or reinvest any assets or property owned by me. Such assets or property may include income producing or non-income producing assets and property.

4. Purchase and/or maintain insurance and annuity contracts, including life insurance upon my life or the life of any other appropriate person.

5. Take any and all legal steps necessary to collect any amount or debt owed to me, or to settle any claim, whether made against me or asserted on my behalf against any other person or entity.

6. Enter into binding contracts on my behalf.

7. Exercise all stock rights on my behalf as my proxy, including all rights with respect to stocks, bonds, debentures, commodities, options or other investments.

8. Maintain and/or operate any business that I may own.

9. Employ professional and business assistance as may be appropriate, including attorneys, accountants, and real estate agents.

10. Sell, convey, lease, mortgage, manage, insure, improve, repair, or perform any other act with respect to any of my property (now owned or later acquired) including, but not limited to, real estate and real estate rights (including the right to remove tenants and to recover possession). This includes the right to sell or encumber any homestead that I now own or may own in the future.

11. Prepare, sign, and file documents with any governmental body or agency, including, but not limited to, authorization to:

a. Prepare, sign and file income and other tax returns with federal, state, local, and other governmental bodies.

b. Obtain information or documents from any government or its agencies, and represent me in all tax matters, including the authority to negotiate, compromise, or settle any matter with such government or agency.

c. Prepare applications, provide information, and perform any other act reasonably requested by any government or its agencies in connection with governmental benefits (including medical, military and social security benefits), and to appoint anyone, including my Agent, to act as my "Representative Payee" for the purpose of receiving Social Security benefits.

12. Make gifts from my assets to members of my family and to such other persons or charitable organizations with whom I have an established pattern of giving (or if it is appropriate to make such gifts for estate planning and/or tax purposes), to file state and federal gift tax returns, and to file a tax election to split gifts with my spouse, if any. No Agent acting under this instrument, except as specifically authorized in this instrument, shall have the power or authority to (a) gift, appoint, assign or designate any of my assets, interests or rights, directly or indirectly, to such

Agent, such Agent's estate, such Agent's creditors, or the creditors of such Agent's estate, (b) exercise any powers of appointment I may hold in favor of such Agent, such Agent's estate, such Agent's creditors, or the creditors of such Agent's estate, or (c) use any of my assets to discharge any of such Agent's legal obligations, including any obligations of support which such Agent may owe to others, excluding those whom I am legally obligated to support.

13. To transfer any of my assets to the trustee of any revocable trust created by me, if such trust is in existence at the time of such transfer.

14. To utilize my assets to fund a trust not created by me, but to which I have either established a pattern of funding, or to fund a trust created by my Agent for my benefit or the benefit of my dependents, heirs or devisees upon the advice of a financial adviser.

15. To create, sign, modify or revoke any trust agreements or other trust documents in an attempt to manage or create a trust that was created for my benefit or the benefit of my dependents, heirs or devisees. This shall include the creation, modification or revocation of any inter vivos, family living, irrevocable or revocable trusts.

16. To exercise fiduciary responsibilities that I have a right to delegate.

17. Subject to other provisions of this document, my Agent may disclaim any interest, which might otherwise be transferred or distributed to me from any other person, estate, trust, or other entity, as may be appropriate. However, my Agent may not disclaim assets to which I would be entitled, if the result is that the disclaimed assets pass directly or indirectly to my Agent or my Agent's estate. Provided that they are not the same person, my Agent may disclaim assets which pass to my Gift Agent, and my Gift Agent may disclaim assets which pass to my Agent.

18. Have access to my healthcare and medical records and statements regarding billing, insurance and payments.

This Power of Attorney shall be construed broadly as a General Power of Attorney. The listing of specific powers is not intended to limit or restrict the general powers granted in this Power of Attorney in any manner.

Any power or authority granted to my Agent under this document shall be limited to the extent necessary to prevent this Power of Attorney from causing, (i) my income to be taxable to my Agent, (ii) my assets to be subject to a general power of appointment by my Agent, or (iii) my Agent to have any incidents of ownership with respect to any life insurance policies that I may own on the life of my Agent.

My Agent shall not be liable for any loss that results from a judgment error that was made in good faith. However, my Agent shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney. A Successor Agent shall not be liable for acts of a prior Agent.

No person who relies in good faith on the authority of my Agent under this instrument shall incur any liability to me, my estate or my personal representative. I authorize my Agent to indemnify and hold harmless any third party who accepts and acts under this document.

If any part of any provision of this instrument shall be invalid or unenforceable under applicable law, such part shall be ineffective to the extent of such invalidity only, without in any way affecting the remaining parts of such provision or the remaining provisions of this instrument.

My Agent shall be entitled to reasonable compensation for any services provided as my Agent. My Agent shall be entitled to reimbursement of all reasonable expenses incurred as a result of carrying out any provision of this Power of Attorney.

My Agent shall provide an accounting for all funds handled and all acts performed as my Agent as required under state law or upon my request or the request of any authorized personal representative, fiduciary or court of record acting on my behalf.

This Power of Attorney shall become effective immediately, and shall not be affected by my disability or lack of mental competence, except as may be provided otherwise by an applicable state statute. This is a Durable Power of Attorney. This Power of Attorney shall continue effective until my death. This Power of Attorney may be revoked by me at any time by providing written notice to my Agent.

[SIGNATURE PAGE FOLLOWS]

Dated 12/26/24 at Detroit, Michigan.

[signature]
MARQUES JOHNSON

Witness Signature: [signature]
Name: Dalien Samuel
City: Detroit
State: Michigan

Witness Signature: [signature]
Name: Keshaland Hayes
City: Detroit
State: MI

STATE OF MICHIGAN, COUNTY OF WAYNE, ss:

The foregoing instrument was acknowledged before me this 26 day of December, 2024, by MARQUES JOHNSON.

Aaron Benjamin Joe

Signature of person taking acknowledgment

AARON BENJAMIN JOE
Notary Public, State of Michigan
County of Wayne
My Commission Expires Jun. 05, 2026
Acting in the County of WAYNE

WITNESS ATTESTATION

The foregoing power of attorney was, on the date written above, published and declared by MARQUES JOHNSON in our presence to be his/her power of attorney. We, in his/her presence and at his/her request, and in the presence of each other, have attested to the same and have signed our names as attesting witnesses.

[signature]
Name: Eloysis Brown
Address: 5057 Warrington Ave.
City, State, ZIP Code: Detroit MI
Telephone: 844-788-6818

Name: Keyon Reed
Address: 5657 Woodward Ave
City, State, ZIP Code: Detroit, MI
Telephone: 844-788-0018

**Notice to Person Executing Power of Attorney:**

A Power of Attorney is an important legal document. By signing the Power of Attorney, you are authorizing another person to act for you, the principal. Before you sign this Power of Attorney, you should know these important facts:

Your Agent (attorney-in-fact) has no duty to act unless you and your Agent agree otherwise in writing.

This document gives your Agent the powers to manage, dispose of, sell and convey your real and personal property, and to use your property as security if your Agent borrows money on your behalf, unless you provide otherwise in this Power of Attorney.

Your Agent will have the right to receive reasonable payment for services provided under this Power of Attorney unless you provide otherwise in this Power of Attorney.

The powers you give your Agent will continue to exist for your entire lifetime, unless you state that the Power of Attorney will last for a shorter period of time or unless you otherwise terminate the Power of Attorney. The powers you give your Agent in this Power of Attorney will continue to exist even if you can no longer make your own decisions respecting the management of your property, unless you provide otherwise in this Power of Attorney.

You can change or correct the terms of this Power of Attorney only by executing a new Power of Attorney, or by executing an amendment through the same formalities as an original. You have the right to revoke or terminate this Power of Attorney at any time, so long as you are competent.

This Power of Attorney must be dated and must be acknowledged before a notary public or signed by two witnesses. All witnesses must be mentally competent and they must witness the principal's signing of the Power of Attorney or (2) the principal's signing or

acknowledgment of his or her signature. A Power of Attorney that may affect real property should be acknowledged before a notary public so that it may easily be recorded.

You should read this Power of Attorney carefully. When effective, this Power of Attorney will give your Agent the right to deal with property that you now have or might acquire in the future. The Power of Attorney is important to you. If you do not understand the Power of Attorney, or any provision of it, then you should obtain the assistance of an attorney or other qualified person.

**Notice to Person Accepting the Appointment as Attorney-in-Fact:**

By acting or agreeing to act as the Agent (attorney-in-fact) under this Power of Attorney, you assume the fiduciary and other legal responsibilities of an Agent. These responsibilities include:

1. The legal duty to: act solely in the interest of the principal; act loyally, with care, competence, and diligence; and avoid conflicts of interest.

2. The legal duty to keep a record of all transactions made on behalf of the principal, including the responsibility to produce receipts, ledgers and other records of all deposits, disbursements or other transactions involving the principal's assets or indebtedness.

3. To cooperate with the principal's Agent for health care decisions, should the principal appoint such an Agent, in making decisions in accordance with the principal's desires or in the best interest of the principal if the principal's wishes are not known.

4. The legal duty to preserve the principal's estate plan, if one exists, and the principal's desires for such plan to be preserved.

5. The legal duty to keep the principal's property separate and distinct from any other property owned or controlled by you.

6. The legal duty to terminate actions as Agent (Attorney-in-Fact) under this Power of Attorney upon the occurrence of any of the following:

a. Principal's death;
b. Revocation of the Power of Attorney of principal;
c. The arrival of any date stated in the Power of Attorney, which states the termination of the Power of Attorney, if any; or
d. No additional action is required under the Power of Attorney.

7. If you are the spouse of the principal, the Power of Attorney terminates upon legal separation or dissolution of the marriage.

8. You may be held responsible and liable for any intentional actions which violate or abuse your authority under this Power of Attorney as provided by the state and federal laws governing this Power of Attorney.

9. You have the right to seek legal advice if you do not understand your duties as Agent or any provisions in the Power of Attorney.

You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property unless this Power of Attorney specifically authorizes you to transfer property to yourself or accept a gift of the principal's property. If you transfer the principal's property to yourself without specific authorization in the Power of Attorney, you may be prosecuted for fraud and/or embezzlement. If the principal is 65 years of age or older at the time that the property is transferred to you without authority, you may also be prosecuted for elder abuse. In addition to criminal prosecution, you may be sued in civil court.

I have read the foregoing notice and I understand the legal and fiduciary duties that I assume by acting or agreeing to act as the Agent (attorney-in-fact) under the terms of this Power of Attorney.

Date: 12/26/24

Signed:

Marques a Johnson

This document was prepared by:
Marques Johnson

# Exhibit C:

Capital one letter on why they closed account

Capital One
P.O. Box 30277
Salt Lake City, UT 84130-0277

October 31, 2024

MARQUES A JOHNSON
APT D
1486 ROBERT BRADBY DR
DETROIT, MI 48207

Re: Account ending in 1583
Creditor: Capital One N.A.

Dear MARQUES A JOHNSON,

We are closing this account because activity on this or another account is not consistent with our expectations for account usage and violates the Capital One Customer Agreement.

Please stop using this account immediately and destroy any cards and checks associated with it. Also, you should update any recurring payments you have set up using this account, such as gym memberships, subscriptions to online streaming services, etc.

You are still responsible for paying the full amount of any remaining account balance and you'll continue to receive billing statements until the balance reaches zero.

Sincerely,

Capital One

**EQUAL CREDIT OPPORTUNITY ACT**

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assitance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20006.

© 2024 Capital One. Capital One is a federally registered service mark.

© 2024 Capital One. Capital One is a federally registered service mark.

# **Exhibit D:**

Request for Review and reinstatement

**Marques Johnson**

1486 Robert Bradby Drive #D

Detroit, MI, 48207

mjtheone49@gmail.com

313-736-6769

**01/07/2025**

**Capital One Financial Corporation**

Attention: Chief Financial Officer (CFO) Andrew M. Young

1680 Capital One Drive

McLean, VA 22102

USA

**RE: Request for Review and Reinstatement of Account (Account Number: 1583)**

Dear [ (CFO) Andrew M. Young ],

I Marques a. Johnson/agent writing to formally request a review of my principals account/ MARQUES JOHNSON, which has recently been closed, and to provide clarification regarding a payment that was flagged as fraudulent. I would like to emphasize that this payment was an honest mistake, not an act of fraud, and I am fully responsible for the error in sending the payment to the incorrect department. However, I did not intend for the payment to be fraudulent, and I am requesting that you reconsider your decision to close my account.

**Explanation of the Payment and Mistake**

I made a payment to my account using an unorthodox method that I believed was legal and appropriate, though it was not the standard method Capital One expects. Unfortunately, I mistakenly sent the payment to the wrong department. I now understand that this may have caused confusion and led to my account being flagged for fraud. I apologize for the confusion, but I assure you that my intentions were never to defraud Capital One.

**Impact of Account Closure**

The closure of the principal's account has had significant consequences for the principal and its family. The principal relies on this credit card to meet essential living expenses, such as purchasing food and covering basic needs. Without this account, the ability to care for its family is severely impacted. I request that you take this into account when reviewing my case and consider the severe hardship caused by the closure of my account.

**Commitment to Repayment**

I want to emphasize that I still fully intend to repay the balance on my account. Once my account is reopened, I will proceed with making the necessary payment to bring the account back into good standing. I am committed to fulfilling my obligations and ensuring that the payment is made.

**Supporting Documentation**

To clarify the situation, I have attached the following documents:

1. **(POA) Power of Attorney -** A copy of a power of attorney is attached to showing the principal/MARQUES JOHNSON has appointed agent/Marques a. Johnson to do what's best for the principal, act on its behalf, and fulfill any financial obligations.

**Request for Account Reinstatement**

Given the circumstances, I respectfully request that you review my account and payment history, and consider reinstating my account. I am willing to cooperate fully and provide any additional information or documentation needed to resolve this issue promptly.

If there is any further action required on my part to facilitate the reinstatement of my account, please do not hesitate to inform me.

**Request for Address Confirmation**

Additionally, could you please confirm the correct address for the **Securities Department** or the relevant department for handling the principal's securities? I want to ensure that all correspondence is sent to the right department to expedite the resolution of this issue.

Thank you for your attention to this matter. I appreciate your understanding and hope that we can resolve this issue swiftly. Please confirm receipt of this letter and the attached documents **in writing within 3 business days.**

Sincerely,

Marques Johnson

Account Number 1583

/s/ Marques Johnson

# **Exhibit e:**

"Credit claim" (tender of payment)

**Marques Johnson**

1486 Robert Bradby Drive #D

Detroit, MI, 48207

mjtheone49@gmail.com

313-736-6769

**01/14/2025**

**Capital One Financial Corporation**

Attention: Chief Financial Officer (CFO) Andrew M. Young

1680 Capital One Drive

McLean, VA 22102

USA

**Credit Claim**

I, Johnson, Marques A./ Agent here on behalf of MARQUES JOHNSON/Principal hereby accept all title, rights, interest and equity owed to the MARQUES JOHNSON/Principal. I hereby instruct CFO (Andrew M. Young) of Capital One to apply the principals balance to the principal account number #1583 for complete set-off. Please apply this Tender of payment to the account within 3 business days after receipt of this notice. I also instruct CFO to communicate in writing if there are any discrepancies and/or confirmation of the froseid instructions within 3 business days to the above address. If no communication is made within 3 business days after receipt of notice then I can assume that the afroseid instructions have been completed.

Notice : The original application for account (#1583) is a security collateral for the benefit of the principal. The agent is 20 years of age (an adult) with the capacity and right to contract. The agent has the legal authority to handle the principals affairs, fulfill any obligations, utilize the principals assets and interest to cover all debts owed (repaying) showing the agent's credit-worthiness.

# **Exhibit f:**

Request for clarification regarding account closure

**Marques Johnson**

1486 Robert Bradby Drive #D

Detroit, MI, 48207

mjtheone49@gmail.com

313-736-6769

**01/14/2025**

**Capital One Financial Corporation**

Attention: Chief Financial Officer (CFO) Andrew M. Young

1680 Capital One Drive

McLean, VA 22102

USA

**Subject: Request for Clarification Regarding Account Closure**

Dear Andrew M. Young,

I received a notice on October 31st, 2024 from your office stating that my account (1583) is being closed due to activity that you claim is "not consistent with expectations for account usage" and that it allegedly violates the Capital One Customer Agreement. While I acknowledge your right to take appropriate measures regarding account management, I am writing to formally request further clarification and explanation regarding this decision.

Specifically, I would like you to provide the following:

1. A detailed explanation of the specific activity that you determined was inconsistent with your expectations for account usage.

2. Identification of the specific terms or clauses in the Capital One Customer Agreement that you allege were violated.

3. Documentation or evidence supporting your decision to close the account, including any relevant transaction details.

4. Information on how I may appeal or address this matter if I disagree with your determination.

Additionally, I request confirmation of the current account balance and an itemized breakdown of any charges or transactions that remain outstanding. This is to ensure that I can fully satisfy any remaining obligations promptly.

Please provide a written response to this inquiry within 5 business days of receipt of this letter. If I don't receive anything in writing to the above address within 5 business days of receipt I can assume my account will automatically be opened.

I trust that you will give this matter your prompt attention and provide the requested information so that I may fully understand and resolve this issue.

Thank you for your cooperation. Should you require further information to address my request, please do not hesitate to contact me at 313-736-6769 or mjtheone49@gmail.com

Sincerely,

Marques Johnson

/s/ Marques Johnson

# **Exhibit g:**

Negotiable Instrument

Pay or manage your account at capitalone.com Customer Service: 800-227-4825 See reverse for Important Information

Accepted for Deposit

Capital One

MARQUES A JOHNSON
APT D
1486 ROBERT BRADBY DR
DETROIT, MI 48207-4950

one-thousand six-hundred eighty-three dollars and twenty-two cents.

Save time, stay informed.
Discover new features with the Capital One Mobile app

Scan this QR Code with your phone's camera to download the top-rated Capital One Mobile app.

Payment Due Date: **Feb 03, 2025** Account ending in 1583

| New Balance | Minimum Payment Due | Amount Enclosed |
|---|---|---|
| $1,683.22 | $334.00 | $ ________ |

Capital One
P.O. Box 4069
Carol Stream IL 60197-4069-69

Please send us this portion of your statement and only one check (or one money order) payable to Capital One to ensure your payment is processed promptly. Allow at least seven business days for delivery.

Pay to the order of Bearer

1 5178057560911583 09 168322005000334002

# **Exhibit h:**

Opportunity to Cure

**Marques Johnson**

1486 Robert Bradby Drive #D

Detroit, MI, 48207

mjtheone49@gmail.com

313-736-6769

**02/10/2025**

**Capital One Financial Corporation**

Attention: Chief Financial Officer (CFO) Andrew M. Young

1680 Capital One Drive

McLean, VA 22102

USA

**Opportunity to Cure**

I, Johnson, Marques A./agent here on behalf of MARQUES JOHNSON/Principal hereby accept all title, rights, interest and equity owed to the MARQUES JOHNSON/Principal. I hereby instruct CFO (Andrew M. Young) of Capital One to apply the principals balance to the principal account number #1583 for complete set-off. Please apply this Tender of payment to the account within 3 business days after receipt of this notice. I also instruct the CFO to communicate in writing if there are any discrepancies and/or confirmation of the froseid instructions within 3 business days to the above address. If no communication is made within 3 business days after receipt of notice then I can assume that the afroseid instructions have been completed.

Notice : The original application for account (#1583) is a security collateral for the benefit of the principal. The agent is 20 years of age (an adult) with the capacity and right to contract. The agent has the legal authority to handle the principals affairs, fulfill any obligations, utilize the principals assets and interest to cover all debts owed (repaying) showing the agent's credit-worthiness.

Sincerely,

Johnson, Marques A./agent

/s/ Marques Johnson

# Exhibit i:

Default Judgement

**Marques Johnson**

1486 Robert Bradby Drive #D

Detroit, MI, 48207

mjtheone49@gmail.com

313-736-6769

**02/18/2025**

**Capital One Financial Corporation**

Attention: Chief Financial Officer (CFO) Andrew M. Young

1680 Capital One Drive

McLean, VA 22102

USA

**Default Judgement**

I, Johnson, Marques A./agent here on behalf of MARQUES JOHNSON/Principal hereby accept all title, rights, interest and equity owed to the MARQUES JOHNSON/Principal. I hereby instruct CFO (Andrew M. Young) of Capital One to apply the principals balance to the principal account number #1583 for complete set-off. Please apply this Tender of payment to the account within 3 business days after receipt of this notice. I also instruct the CFO to communicate in writing if there are any discrepancies and/or confirmation of the froseid instructions within 3 business days to the above address. If no communication is made within 3 business days after receipt of notice then I can assume that the afroseid instructions have been completed.

Notice : The original application for account (#1583) is a security collateral for the benefit of the principal. The agent is 20 years of age (an adult) with the capacity and right to contract. The agent has the legal authority to handle the principals affairs, fulfill any obligations, utilize the principals assets and interest to cover all debts owed (repaying) showing the agent's credit-worthiness.

Sincerely,

Johnson, Marques A./agent

/s/ Marques Johnson

# **Exhibit j:**

Equifax credit report

Prepared for:

**MARQUES JOHNSON JUNIOR**

EQUIFAX

Date: June 13, 2025
Confirmation # 5164615558

## CAPITAL ONE BANK USA NA - Closed

PO BOX 31293, Salt Lake City, UT 841311293 | (800) 955-7070
Account Number: ***1583** | Owner: **Individual Account**
Loan/Account Type: **Credit Card** | Status: **Charge Off**

Date Reported: **05/13/2025** | Balance: **$1,856**
Credit Limit: **$1,500** | High Credit: **$1,856**

Date Opened: **12/21/2022**
Date of Last Activity: ■
Scheduled Payment Amount: ■
Actual Payment Amount: ■
Date of Last Payment: **09/14/2024**
Term Duration: ■

Date of 1st Delinquency: **12/03/2024**
Date Major Delinquency 1st Reported: **05/13/2025**
Amount Past Due: **$1,856**
Charge Off Amount: **$1,856**
Date Closed: ■
Activity Designator: **Closed**

Terms Frequency: **Monthly**
Months Reviewed: **28**
Deferred Payment Start Date: ■
Balloon Payment Amount: ■
Balloon Payment Date: ■
Narrative Code(s): **067, 065, 002**

### Payment History

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2025 | 60 | 90 | 120 | 120 | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| 2024 | ✓ | ✓ | ✓ | ✓ | 30 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | 30 |
| 2023 | ■ | ■ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ✓ | Paid on Time | 30 | 30 Days Past Due | 60 | 60 Days Past Due | 90 | 90 Days Past Due | 120 | 120 Days Past Due |
| 150 | 150 Days Past Due | 180 | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | ■ | No Data Available |

### 24 Month History

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 04/25 | $1,809 | $61 | ■ | 09/14/2024 | $390 | $1,809 | $1,500 | 065, 002, 233, 283 |
| 03/25 | $1,766 | $61 | ■ | 09/14/2024 | $334 | $1,767 | $1,500 | 065, 002, 233, 283 |
| 02/25 | $1,722 | $56 | ■ | 09/14/2024 | $236 | $1,767 | $1,500 | 065, 002, 233, 283 |
| 01/25 | $1,683 | $98 | ■ | 09/14/2024 | $141 | $1,767 | $1,500 | 065, 002, 233 |
| 12/24 | $1,602 | $95 | ■ | 09/14/2024 | $50 | $1,767 | $1,500 | 065, 002, 233 |
| 11/24 | $1,522 | $91 | ■ | 09/14/2024 | ■ | $1,767 | $1,500 | 065, 002, 233 |
| 10/24 | $1,445 | $50 | ■ | 09/14/2024 | ■ | $1,767 | $1,500 | 065, 002, 233 |
| 09/24 | $1,434 | $50 | ■ | 08/10/2024 | ■ | $1,767 | $1,500 | 002, 233 |
| 08/24 | $1,540 | $55 | ■ | 07/10/2024 | ■ | $1,767 | $1,500 | 002, 233 |
| 07/24 | $1,556 | $56 | ■ | 06/27/2024 | ■ | $1,767 | $1,500 | 002, 233 |
| 06/24 | $1,572 | $57 | ■ | 05/31/2024 | ■ | $1,767 | $1,500 | 002, 233 |
| 05/24 | $1,767 | $102 | ■ | 04/08/2024 | $48 | $1,767 | $1,500 | 002, 233 |
| 04/24 | $1,682 | $86 | ■ | 04/08/2024 | ■ | $1,682 | $1,500 | 002, 233 |
| 03/24 | $1,517 | $55 | ■ | 03/01/2024 | ■ | $1,548 | $1,500 | 002, 233 |
| 02/24 | $1,532 | $53 | ■ | 02/03/2024 | ■ | $1,548 | $1,500 | 002, 233 |
| 01/24 | $1,548 | $54 | ■ | 12/28/2023 | ■ | $1,548 | $1,500 | 002, 233 |
| 12/23 | $1,429 | $25 | ■ | 12/07/2023 | ■ | $1,494 | $1,500 | 002, 233 |
| 11/23 | $1,403 | $46 | ■ | 10/26/2023 | ■ | $1,434 | $1,500 | 002, 233 |
| 10/23 | $987 | $38 | ■ | 09/21/2023 | ■ | $1,348 | $1,500 | 002, 233 |
| 09/23 | $1,287 | $45 | ■ | 09/07/2023 | ■ | $1,348 | $1,500 | 002, 233 |
| 08/23 | $1,090 | $27 | ■ | 07/01/2023 | ■ | $1,090 | $1,500 | 002, 233 |
| 07/23 | $322 | $25 | ■ | 06/27/2023 | ■ | $495 | $1,500 | 002, 233 |
| 06/23 | $396 | $25 | ■ | 06/01/2023 | ■ | $495 | $500 | 002, 233 |

| Narrative Code | Narrative Code Description |
|---|---|
| 067 | Charged Off Account |
| 065 | Account Closed By Credit Grantor |
| 002 | Credit Card |
| 233 | Amount in High Credit Column is Credit Limit |
| 283 | Account Previously in Dispute - Now Resolved by Data Furnisher |

# **Usps tracking proof**

For exhibits

- B, d
- E, f , g
- H
- I

**ALERT: SEVERE WEATHER AND FLOODING THAT IS MOVING FROM TEXAS THROUGH THE SO...**

# USPS Tracking®

**FAQs >**

**Remove ✕**

**Tracking Number:**

## 70150640000418136127

**Copy** **Add to Informed Delivery (https://informeddelivery.usps.com/)**

## Latest Update

Your item was delivered to an individual at the address at 9:22 am on January 13, 2025 in MC LEAN, VA 22102.

Feedback

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

## Delivered

**Delivered, Left with Individual**

MC LEAN, VA 22102
January 13, 2025, 9:22 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates**

**USPS Tracking Plus®**

**Product Information**

**See Less**

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

ALERT: SEVERE WEATHER AND FLOODING THAT IS MOVING FROM TEXAS THROUGH THE SO...

# USPS Tracking®

FAQs >

Tracking Number:

Remove X

## 70150640000418145174

Copy Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item has been delivered and is available at a PO Box at 10:08 am on January 21, 2025 in MC LEAN, VA 22102.

Feedback

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

### Delivered

**Delivered, PO Box**

MC LEAN, VA 22102
January 21, 2025, 10:08 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates**

**USPS Tracking Plus®**

**Product Information**

**See Less**

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

ALERT: SEVERE WEATHER AND FLOODING THAT IS MOVING FROM TEXAS THROUGH THE SO...

# USPS Tracking®

FAQs >

Remove ✕

Tracking Number:

## 9214890142980413314009

Copy Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was picked up at a postal facility at 9:40 am on February 18, 2025 in MC LEAN, VA 22102.

Feedback

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

### Delivered

**Delivered, Individual Picked Up at Postal Facility**

MC LEAN, VA 22102
February 18, 2025, 9:40 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates**

**Return Receipt Electronic**

**USPS Tracking Plus®**

**Product Information**

**See Less**

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

ALERT: SEVERE WEATHER AND FLOODING THAT IS MOVING FROM TEXAS THROUGH THE SO...

# USPS Tracking®

FAQs >

Remove ✕

Tracking Number:

## 9214890142980413993938

Copy    Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was picked up at a postal facility at 9:30 am on February 24, 2025 in MC LEAN, VA 22102.

Feedback

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

### Delivered

**Delivered, Individual Picked Up at Postal Facility**

MC LEAN, VA 22102
February 24, 2025, 9:30 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates**

**Return Receipt Electronic**

**USPS Tracking Plus®**

**Product Information**

**See Less**

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs